UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL SALDANA, | No. 2:18-cv-0319 AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| SPEARMAN, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendant's motion for summary judgment. ECF No. 56.

I.  Procedural History

Upon screening of the complaint, the undersigned found that plaintiff had stated a viable claim under the Eighth Amendment against defendant Passwaters, but that he had failed to state a claim against defendant Spearman. ECF No. 10. Plaintiff was given the option to either proceed on the complaint as screened or amend the complaint. Id. at 7. He opted to proceed without amending the complaint, and voluntarily dismissed his claims against Spearman. ECF No. 13. Following the close of discovery, defendant then filed a motion for summary judgment, ECF No. 56, which plaintiff opposes, ECF No. 64.

////

1

II. Plaintiff's Allegations

Plaintiff alleges that on August 8, 2017, defendant Passwaters deliberately slammed a metal door on his hand, resulting in extensive nerve damage that requires surgery. ECF No. 1 at 3-5. Defendant allegedly slammed the door on plaintiff's hand as punishment for plaintiff reaching for an extra food tray. Id. at 3.

III. Motion for Summary Judgment

A. Defendants' Arguments

Defendant Passwaters moves for summary judgment on the grounds that he did not act sadistically and maliciously because he did not deliberately close the door on plaintiff's hand and, alternatively, that he is entitled to qualified immunity. ECF No. 56.

B. Plaintiff's Response

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. (citation omitted).

Accordingly, though plaintiff has largely complied with the rules of procedure, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions which have evidentiary support in the record will be considered.

////

Plaintiff argues in sum that defendant deliberately closed the door on his hand for the specific purpose of causing him harm and that defendant has not met his burden of demonstrating there is no dispute as to any material fact. ECF No. 64.

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On February 25, 2021, defendant served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 56-1;

see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V. Undisputed Material Facts

The following facts are undisputed except as noted.

On August 8, 2017, plaintiff was housed in cell 216 in building C7, and defendant was assigned to work in the control booth tower of the building. Defendant's Undisputed Statement of Facts (DSUF) (ECF No. 56-3) ¶¶ 2, 6; Response to DSUF (ECF No. 64 at 6-9) ¶¶ 2, 6. At 5:00 p.m., plaintiff was released from his cell to get dinner, and defendant opened the cell doors from the control tower. DSUF ¶¶ 8, 10; Response to DSUF ¶¶ 8, 10.[1] Defendant started closing the doors on the upper tier once he saw the inmates were in their cells and then turned his attention to the lower tier cells to begin releasing those inmates for dinner. DSUF ¶ 11.[2] Upon plaintiff's return to his cell, another inmate offered him a second dinner tray. DSUF ¶ 12.[3] Plaintiff reached out of his cell to get the tray as the cell door was closing, but once he had the tray, the door had closed too much for the tray to fit through the cell door. DSUF ¶¶ 15-16; Response to DSUF ¶¶ 15-16. He then called out to defendant, who told plaintiff he could not have the extra tray and

---

[1] Plaintiff disputes the statement that the doors were opened remotely and states that the door was manually operated. Response to DSUF ¶ 10. However, he further explains that the doors are operated by manually pushing a button in the control tower and that there "is no remote control." Id. Accordingly, it is undisputed that defendant opened the door from the control tower rather than physically opening the door with his own hands.

[2] Plaintiff disputes DSUF ¶ 11 on the ground that if it is true, then defendant has admitted to violating specified department policies. Response to DSUF ¶ 11. Since plaintiff has not actually disputed DSUF ¶ 11, it is deemed admitted.

[3] Plaintiff disputes DSUF ¶ 12 on the ground that it contradicts defendant's statement that the upper tier inmates were back in their cells before he began closing the cell doors; plaintiff does not actually dispute the fact. Response to DSUF ¶ 12. Furthermore, plaintiff testified at his deposition that another inmate offered him his tray while the door was closing, ECF No. 56-5 at 19-20 (PL's Depo at 45:10-46:9), and DSUF ¶ 12 is therefore deemed admitted. The court further notes that DSUF ¶ 12 does not clearly contradict DSUF ¶ 11, as plaintiff's deposition testimony reflects that the doors take four to five seconds to close, ECF No. 56-5 at 20 (PL's Depo at 46:21-24), leaving the possibility that the inmate exited his cell when defendant turned his attention to the lower tier. Moreover, even if the other inmate was not in his cell when defendant began closing the cell doors, it would not be material to resolving the motion for summary judgment.

to drop it, which plaintiff refused to do. DSUF ¶¶ 17-18; Response to DSUF ¶¶ 17-18. The cell door subsequently hit plaintiff's hand, and he requested medical treatment around 7:00 p.m. DSUF ¶ 21; Response to DSUF ¶ 21.[4]

VI.  Disputed Facts

Although the parties are largely in agreement as to the timeline of events, they dispute defendant's knowledge and intent regarding the use of force.

Under defendant's version of events, it is a violation of policy for inmates to have more than one meal tray. DSUF ¶ 13. After telling Saldana to drop the tray, defendant heard someone call out as plaintiff's cell door continued to close, and defendant saw plaintiff holding the tray out of his cell door. DSUF ¶ 20. He proceeded to open plaintiff's cell while plaintiff briefly stepped out before returning to his cell. Id. Approximately two hours later, another inmate informed defendant that plaintiff needed medical care because his wrist hurt from being hit by the cell door. DSUF ¶ 21. At this point, defendant became aware that the cell door hit plaintiff's wrist. Id.

Under plaintiff's version of events, there is no policy that prevents an inmate from having a second tray and he and defendant had a conversation in which defendant told him multiple times to drop the tray or defendant would smash his hand. Response to DSUF ¶ 13; ECF No. 56-5 at 17 (PL's Depo at 42:1-15). Plaintiff thought defendant was joking and asked him if he was serious, but defendant continued to hold the button to close the door while looking at plaintiff, and after the cell door closed on plaintiff's arm defendant continued to hold the button for an additional ten to fifteen seconds before finally opening the door. Id. at 17-18 (PL's Depo at 42:6-43:7). Plaintiff could hear the motor for the door running the entire time, which was how he knew defendant was still holding the button down. Id. (PL's Depo at 42:21-43:4). When plaintiff later returned the trays, he confronted defendant, who admitted he intentionally closed the door on plaintiff's hand. Id. at 18 (PL's Depo at 43:6-17).

////

---

[4] Though plaintiff disputes defendant's claim that he was initially unaware that the cell door made contact with plaintiff's wrist, both parties acknowledge that plaintiff later sought medical attention due to being hit by the cell door.

6

VII. <u>Discussion</u>

    A.    <u>Eighth Amendment Excessive Force Standards</u>

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, 503 U.S. at 6-7.

When determining whether the force was excessive, the court looks to "the extent of injury suffered by an inmate," in addition to "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" <u>Id.</u> at 7 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986)). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Id.</u> at 9-10 (citing <u>Whitley</u>, 475 U.S. at 327).

Excessive force cases often turn on credibility determinations, and "[the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." <u>Smith v. City of Hemet</u>, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (alteration in original) (quoting <u>Santos v. Gates</u>, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." <u>Id.</u> (quoting <u>Santos</u>, 287 F.3d at 853). The Ninth Circuit has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury." <u>Liston v. County of Riverside</u>, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (citations omitted).

    B.    <u>Injury Suffered by Plaintiff</u>

The nature and extent of a plaintiff's injury, while not dispositive, must be considered in

7

determining whether the evidence supports a reasonable inference that defendant's alleged use of force was motivated by malicious or sadistic intent. Hudson, 503 U.S. at 7. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curium). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7.

This factor weighs in plaintiff's favor. Defendant has not disputed plaintiff's alleged injury. Accordingly, for purposes of the motion the court takes as true plaintiff's allegations of pain and swelling in his wrist right after the incident followed by a later diagnosis of extensive nerve damage. See ECF No. 1 at 4-5. These alleged injuries support a finding that plaintiff's injuries were significant, indicating that the force defendant used was more than de minimis.

### C.      Need for Application of Force

An inmate's refusal to comply with orders may present a threat to the safety and security of a prison that justifies the use of force. See Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (use small quantities of pepper spray may be justified "if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required").

> "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them . . . . Inmates are and must be required to obey orders. When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger."

Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009) (alterations in original) (quoting Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984)). However, "[n]ot every instance of inmate resistance justifies the use of force." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (citing Hickey v. Reeder, 12 F.3d 754, 759 (8th Cir. 1993)).

It is undisputed that defendant asked plaintiff to drop the additional food tray and plaintiff refused. DSUF ¶¶ 17-18; Response to DSUF ¶¶ 17-18. Accordingly, it is possible that some use

of force may have been justified. However, defendant argues that any use of force here was accidental or unbeknownst to him, ECF No. 56-2 at 6, and as such does not address the need for any level of force in the situation presented or argue that the use of force was necessary.

Viewing the facts in the light most favorable to plaintiff, and absent any evidence from defendant to the contrary, plaintiff's resistance to dropping the tray did not justify a need to use force. Although plaintiff refused to drop the tray, he also thought defendant was joking and asked him if he was serious. There is no evidence that plaintiff posed a physical threat to anyone, was in danger of inciting the other inmates, or would have continued to resist defendant's order had defendant stopped closing the cell door and explained that he was not joking and that plaintiff did in fact need to drop the tray. See Treats, 308 F.3d at 872 (no objective need for force where it was not clear inmate would have remained noncompliant if he had been given "clearer directions or issued a warning" before being pepper sprayed). Thus, this factor tips in plaintiff's favor.

### D. Relationship Between Need for Force and Amount of Force Used

In determining whether there has been an Eighth Amendment violation, the standard is "malicious and sadistic force, not merely objectively unreasonable force." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002); Hudson, 503 U.S. at 9 (1992) (not every malevolent touch gives rise to an Eighth Amendment claim). Even in instances where force is justified, the use of force may still violate the Eighth Amendment if it is disproportionate to the need. Hoptowit v. Ray, 682 F.2d 1237, 1251 (9th Cir. 1982) ("[G]uards may use force only in proportion to the need in each situation." (citation omitted)).

It is undisputed that plaintiff refused to follow defendant's order to drop the tray. DSUF ¶¶ 17-18; Response to DSUF ¶¶ 17-18. However, the facts before the court demonstrate that his resistance to defendant's order was nonviolent and posed no threat of physical harm to defendant or anyone else. As previously noted, defendant has provided no evidence that any degree of force was necessary. On this record, defendant's response of crushing plaintiff's hand with the cell door was clearly out of proportion to plaintiff's resistance and this factor tips in plaintiff's favor.

////

////

E. Threat Perceived by Defendants

Next, the court must consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley, 475 U.S. at 321. In weighing this factor, courts should be mindful that "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Id. at 320. "However, the absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." Jordan v. Gardner, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993) (citing Hudson, 503 U.S. at 7).

Plaintiff's facts establish that while he did resist dropping the tray, his resistance was non-violent, and it does not appear that he posed a threat to anyone. ECF No. 56-5 at 17-20 (PL's Depo at 42:1-43:17, 45:4-46:16). On these facts, while some threat may have existed due to plaintiff's refusal to comply with orders, it does not appear that there was any immediate threat of physical harm to defendant or anyone else. This is particularly true since only the inmate who was attempting to give plaintiff the extra tray was out on the upper tier, indicating that there was no danger to or from other inmates or immediate concerns about the incident escalating in size. Taking these facts as true, any threat that may have been perceived at the time was limited, and this factor weighs in plaintiff's favor.

F. Efforts Made to Temper the Severity of the Force

Lastly, any effort to temper the severity of the force depends upon the version of facts believed. Under plaintiff's version of events, which must be taken as true for the purposes of summary judgment, defendant threatened to purposely close the door on plaintiff's hand and did so. ECF No. 56-5 at 17 (PL's Depo at 42:1-15). Additionally, plaintiff states that defendant later admitted that he deliberately smashed plaintiff's hand because plaintiff took an extra tray. Id. at 18 (PL's Depo at 43:6-17).

The record before the court includes no evidence that defendant attempted to temper the amount of force used. Under plaintiff's version of the facts, defendant failed to temper the

amount of force used and showed signs of deliberately using force on plaintiff for no reason other than causing him harm.  This factor therefore tips in plaintiff's favor.

### G. Conclusion as to Excessiveness of Force

Because all factors tip in plaintiff's favor, defendant's motion for summary judgment on plaintiff's excessive force claim should be denied unless he is entitled to qualified immunity.

### H. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially).  These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.  Thus, if a court decides that plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or constitutional violation.  Pearson, 555 U.S. at 236-42.

"[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful."  Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (citing Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994)).  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  Mullenix v. Luna, 577 U.S. 7, 12 (2015) (alteration in original) (quoting Ashcroft v. al-Kidd, 563

U.S. 731, 742 (2011)).  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"  Id. (emphasis in original) (quoting al-Kidd, 563 U.S. at 742). "[T]his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 201).

The court has already determined that under plaintiff's version of the facts, the allegations demonstrate violations of plaintiff's rights under the Eighth Amendment, and the first prong is therefore resolved in plaintiff's favor.

With respect to whether there was a clearly established right, the law at the time was clear that force used sadistically and maliciously for the very purpose of causing harm violated the Eighth Amendment.  Whitley, 475 U.S. at 312, 320-21 (1986).  The existence of factual disputes regarding the need, the degree, and the motivation for the force used preclude a finding that defendant is entitled to qualified immunity because, if plaintiff's facts are believed by the jury, defendant acted with the specific purpose of punishing plaintiff and causing him harm.  A reasonable officer would not have believed that it was lawful to close the door on plaintiff's hand for the very purpose of inflicting harm.

VIII.   Conclusion

Since plaintiff has raised triable issues of material fact, defendant's motion for summary judgment should be denied.

IX.   Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendant's motion for summary judgment be denied.  You have shown that there is a dispute as to why Passwaters used force, and it is possible a jury could find that he purposely closed the door on your hand to hurt you.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment, ECF No. 56, be DENIED.

////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 12, 2021

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE